ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAR 2 9 2004
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CLR TIMBER HOLDINGS, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 04 - 501C |

## COMPLAINT

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609.

2. Plaintiff is CLR Timber Holdings, Inc. ("CLR").

3. Defendant is the United States of America acting through the United States Forest Service, Department of Agriculture (the "Forest Service").

4. This action arises out of the Forest Service's November 25, 2003 denial of CLR's Contract Disputes Act claim for breach of the Forest Service's Too Wild timber sale contract, Contract No. 075862.

5. The Too Wild timber sale involves the sale and harvest of certain timber located in the Siskiyou National Forest in Oregon.

6. The Too Wild timber sale contract was awarded to CLR by the Forest Service on May 14, 1999.

7. On August 2, 1999, in Oregon Natural Resources Council Action v. U.S. Forest Service and Bureau of Land Management, No. C98-942WD, the United States District Court issued a decision and opinion on the parties' cross-motions for summary judgment in which it found that the Forest Service had acted arbitrarily and capriciously and not in accordance with the law in approving certain timber sales in violation of the President's Northwest Forest Plan's wildlife survey requirements. The court granted summary judgment against the Forest Service based on this finding and entered an injunction immediately suspending certain timber sales identified in the amended complaint.

8. On August 26, 1999, the court expanded its previously entered injunction to another 25 timber sales, including the Too Wild timber sale.

9. By a telephone call on August 31, 1999, followed by a letter dated September 1, 1999, the Forest Service directed CLR to suspend all operations immediately on Too Wild. This wrongful Forest Service-caused suspension was a breach of the Too Wild timber sale contract.

10. Although CLR was in the process of harvesting the sale, CLR reluctantly complied with the Forest Service's suspension.

11. Except for allowing CLR to remove 224 MBF of timber that had been cut but not removed prior to the suspension, the Too Wild timber sale has remained fully suspended since August 31, 1999.

12. In the fall of 1999, the United States District Court ordered the environmental activist plaintiffs, the Forest Service and the Bureau of Land Management ("BLM") to engage in settlement negotiations concerning the scope and duration of the court's injunction.

13. As a result, on November 23, 1999, the environmental activist plaintiffs, the Forest Service and the BLM filed a stipulation and proposed order for dismissal of the case under which the Forest Service agreed, among other things, to continue the suspension of operations on the Too Wild timber sale until certain wildlife survey requirements, which the Forest Service had failed to fulfill prior to awarding the Too Wild timber sale contract, were satisfied. The Forest Service also gave the environmental activist plaintiffs the right to review any completed surveys and to object to their sufficiency before operations on the sale could resume.

14. By letter dated January 3, 2001, CLR was advised that the Forest Service was also suspending performance on the Too Wild timber sale as a result of an injunction entered in the case of Pacific Coast Federation of Fisherman v. NMFS, No. C00-1757R by Judge Rothstein of

the U.S. District Court for the Western District of Washington. This suspension of performance constituted an additional and alternative breach of the Forest Service's implied duties to cooperate and not to hinder CLR's performance and a breach of the Too Wild timber sale contract.

15. Other than the limited removal of some of the felled timber in the fall of 1999, CLR has not been permitted to remove any timber from the Too Wild timber sale and the Forest Service's suspension of operations remains in effect.

16. When CLR bought the Too Wild timber sale, it was relying on the timber from that sale to supply its mill during the third quarter of 1999 and in the 2nd and 3rd quarters of both 2000 and 2001.

17. Because of the Forest Service's suspension of operations, CLR was unable to remove most of the timber from the Too Wild timber sale, and it was forced to purchase replacement timber of equal or lesser quality at a substantially higher cost in order to supply its mill.

18. Specifically, CLR was forced to purchase 11,711 MBF of Douglas fir timber from various sources at an average delivered log cost of $705.94. CLR was required to accept and pay for all of the volume delivered by the seller under the contract. The average delivered log cost reasonably anticipated by CLR for the Too Wild timber sale was $534.85 per MBF.

Accordingly, the additional replacement cost incurred by CLR in purchasing replacement timber was $2,003,634.90 ($705.94 - $534.85 = $171.09 x 11,711 MBF = $2,003,634.90).

19. In addition, as a result of the Forest Service's wrongful suspensions, CLR incurred additional performance bond costs, through December 31, 2003, in the amount of $3,065.54. These costs are continuing.

20. Also, in order to yard and haul the felled timber on the sale in the fall of 1999, CLR's logging subcontractor, Hog Mt. Equipment, was forced to move in the necessary yarding and loading equipment that was removed because of the suspension. The cost of the unanticipated move-in and move-out resulted in additional damages in the amount of $9,700.

21. At the time of the August 31, 1999 suspension, CLR had deposits on the sale totaling $328,200. On October 1, 2000, this amount was reduced to $6,564. Interest on the original amount, through October 1, 2000, equals $24,174.40. Interest on the reduced deposits, through December 31, 2003, amounts to $1,116.19. The total interest owed to CLR as a result of the Forest Service's wrongful suspensions, through December 31, 2003, equals $25,290.59 ($24,174.40 + $1,116.19 = $25,290.59). These costs are continuing.

22. Prior to the Forests Service's August 31, 1999 suspension of operations, CLR had constructed a number of temporary roads in Units 1 and 16 of the Too Wild timber sale area. As with all federal government sales, it was CLR's intention to amortize the cost of this road

construction over the total volume of the units involved. Because CLR was only allowed to harvest a very small portion of the timber in Units 1 and 16, amortization of some of CLR's expenditures for temporary roads has been delayed for over four years. Through December 31, 2003, those costs amount to $5,019.03. These costs are continuing.

23. Thus, as a direct result of the Forest Service's wrongful suspensions of the Too Wild timber sale, CLR incurred total damages, through December 31, 2003, in the amount of $2,046,710. As indicated above, some of these costs are continuing to increase.

24. On September 10, 2003, CLR submitted a properly certified claim letter to the Contracting Officer pursuant to the Contract Disputes Act seeking the damages detailed above and requesting a final decision within 60 days.

25. By letter dated November 25, 3003, the Contracting Officer denied CLR's claim for replacement timber and for the unamortized road construction, but awarded $3,066 for holding performance bonding until December 31, 2003, $9,700 for the unanticipated move-in and move-out costs, and $25,439 in deposit interests, plus CDA interest in the amount of $353 for a total award of $38,558.

WHEREFORE, plaintiff respectfully requests that this Court:

(a) rule that the Forest Service breached the Too Wild timber sale contract by wrongfully suspending the Too Wild timber sale;

(b) overturn the Contracting Officer's denial of plaintiff's claim;

(c) award plaintiff all the damages it has suffered as a result of the Forest Service's wrongful suspensions of the Too Wild timber sale, plus applicable interest in accordance with the Contract Disputes Act;

(d) award plaintiff its costs and attorneys' fees incurred in pursuing this action; and

(e) grant plaintiff such further relief as this Court deems just and proper.

Respectfully submitted,

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140
(202) 775-8217 (facsimile)

Counsel for Plaintiff

Dated: March 29, 2004